# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| DIXON LUMBER CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-00130 |
| | ) | |
| AUSTINVILLE LIMESTONE CO., INC., | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Dixon Lumber Company (Dixon) and defendant Austinville Limestone Company (ALC) own adjacent plots of land in Wythe County, Virginia. Both companies bought their property from Gulf & Western Industries (G&W), which operated a zinc and lead mine on ALC's site through a division called New Jersey Zinc Company (NJZ). Years before ALC and Dixon purchased their properties, NJZ dumped limestone tailings, a byproduct of its mining operations, on the plot now owned by Dixon. Dixon seeks to hold ALC responsible for environmental liabilities arising from those limestone tailings under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 1906–9675.

This opinion addresses two pending motions. The first is a motion for partial dismissal filed by ALC. (Dkt. No. 104.) The second is Dixon's motion to strike ALC's affirmative defenses. (Dkt. No. 112.) The motions have been fully briefed and were argued before the court on October 6, 2017. For the reasons set forth below, ALC's motion for partial dismissal will be granted, and Dixon's motion to strike ALC's affirmative defenses will be denied.

I. BACKGROUND

In November 1984, Dixon purchased land from G&W. Dixon represents that it was unaware of the tailings pile on part of the land called Austin Meadows; Dixon did not learn about the pile until 1992 when it received a letter from the State Water Control Board informing it that high amounts of zinc and lead were emanating from the tailings. The same year it received the letter, Dixon entered a consent agreement with the Department of Environmental Quality (DEQ) to remove the tailings pile from Austin Meadows and reclaim the limestone tailings.

That consent order authorized Dixon to contract with ALC to remove the limestone tailings. A series of amended consent orders extended the term of the order until 2015. Pursuant to the consent orders, Dixon and ALC entered into a series of agreements regarding the removal of the limestone tailings. The original agreement, executed in 1993, authorized ALC to remove the tailings pile and provided that its operations would be considered remedial actions on behalf of Dixon. Subsequent agreements in 2003 and 2008 extended the timeline for ALC's tailings removal activities and provided that Dixon would receive a royalty for tailings removed, processed, and sold by ALC. Dixon alleges that ALC failed to conduct these removal activities in a timely manner and to comply with the removal standards acceptable to DEQ and that, as a result, ALC caused releases or threatened releases of hazardous substances from the site.

Following a heavy rainfall and discharge of pollutants in June 2013, DEQ and the Department of Mines, Minerals, and Energy (DMME) entered into a letter of agreement with Dixon and ALC. Among other things, the agreement required Dixon and ALC to develop a final plan for reclamation of Austin Meadows and submit it to DEQ and DMME. While developing that plan, Dixon and ALC hit an impasse on which party would be responsible for final reclamation costs on Dixon's site. Dixon subsequently filed this suit, claiming that ALC is liable

for at least some of the costs.

Dixon's original complaint alleged that ALC was liable for response costs as an "owner" (as successor to NJZ) under 42 U.S.C. § 9607(a)(1) and as an "operator" under 42 U.S.C. § 9607(a)(2), as well as for contribution under 42 U.S.C. § 9613. By order dated June 9, 2017, the court held that ALC was not a corporate successor to G&W for purposes of CERCLA liability. (Dkt. No. 70.) Thereafter, Dixon filed a first amended complaint adding the claim that ALC is liable as an "arranger" pursuant to 42 U.S.C. § 9607(a)(3).

## II. DISCUSSION

### A. ALC's Motion to Dismiss Dixon's Arranger Liability Claim

ALC first moves to dismiss Dixon's arranger liability claim under Rule 12(b)(6) for failure to state a claim for which relief can be granted. It contends that Dixon failed to state an arranger liability claim because it did not allege that ALC arranged for the disposal of hazardous substances by any *other* party, as is required under 42 U.S.C. § 9607(a)(3). In response, Dixon argues that 42 U.S.C. § 9607(a)(3) does not require a party to have arranged for disposal with another party in order for arranger liability to attach. The court rejects Dixon's argument and holds that Dixon has failed to state an arranger liability claim.

**1. Standard of review under Rule 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The

plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

**2. The court will consider Dixon's attached exhibits.**

Dixon attached ten exhibits to its amended complaint: a 1992 DEQ letter to plaintiff; the June 1994 consent order; the 1999 consent order; the 2008 consent order; the 1996 agreement between the parties; defendant's mining permit; the parties' 2003 limestone tailings removal agreement and its 2008 amended version; the parties' 2013 letter of agreement with DEQ and DMME; and a DEQ email praising plaintiff in 2013. (Dkt. No. 85.) While generally, a court should not consider documents outside of the complaint on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), it "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006).

The exhibits' authenticity is not disputed, and they do not raise new claims for the first time. *See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) ("It is well-established that parties cannot amend their

complaints through briefing or oral advocacy."). Nor do the exhibits reflect a "unilateral . . . version of contested events," or "contested events" at all. *See Goines v. Valley Cmty. Serv. Bd.*, 822 F.3d 159, 167–68 (4th Cir. 2016). Thus the court will consider the documents, though some or most may make no difference in its resolution of ALC's motion for partial dismissal.

### 3. Dixon fails to state an arranger liability claim against ALC.

CERCLA imposes liability upon four broad categories of "potentially responsible parties" ("PRPs"): (1) owners and operators of a vessel or facility, (2) any person who owned or operated a facility at the time a hazardous substance is disposed, (3) those persons who arrange for disposal or treatment of hazardous substances, and (4) those who accept hazardous substances for transport to disposal or treatment facilities. 42 U.S.C. § 9607(a). ALC moves to dismiss Dixon's claim under the third liability category, often called the arranger provision, which imposes liability on

> any person who by contract, agreement, or otherwise *arranged for disposal* or treatment . . . of hazardous substances owned or possessed by such person, *by any other party* or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.

*Id*. § 9607(a)(3) (emphasis added). If PRP status is established, a party faces liability under CERCLA for "all costs of removal or remedial action incurred by the United States Government or a State" as well as "any other necessary costs of response incurred by any other person consistent with the national contingency plan." *Id*. § 9607(a)(4). CERCLA permits a PRP to "seek contribution from any other person who is liable or potentially liable under section 9607(a)." *Id*. § 9613(f)(1).

Although Dixon amended its complaint to add the arranger liability claim, it did not allege any additional facts to those already addressing owner and operator liability in its original complaint. Instead, Dixon asserts that while "the operative facts underlying Dixon's original

5

complaint supporting ALC's liability as a CERCLA 'owner' and/or 'operator' had not changed," it amended its complaint because ALC's liability "was expanded based on the recent decision in *Chevron Mining Inc. v. United States*, 863 F.3d 1261 (10th Cir. 2017)." (Pl.'s Opp'n 1, Dkt. No. 111.)

The court begins by examining the plain language of the arranger liability provision. The language of the provision imposes liability on any party who (1) arranged for disposal (2) of hazardous substances (3) that the party owns or possesses (4) by any other party. 42 U.S.C. § 9607(a)(3). Although the statute does not define "arranged for," the Supreme Court narrowed the scope of arranger liability in *Burlington Northern* by holding that a party's intent to dispose of hazardous substances is required to establish arranger liability; mere knowledge is not sufficient. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 610–11 (2009) (emphasizing that arranger liability "may not extend beyond the limits of the statute itself"). The Court explained that arranger liability would certainly attach "if an entity were to enter into a transaction for the sole purpose of discarding" a hazardous substance; less clear cases, on the other hand, "turn on a fact-specific inquiry into the nature of the transaction." 556 U.S. at 610 (internal citations and quotations omitted).

In determining whether ALC "arranged for" the disposal of hazardous substances, the court cannot conclude ALC "enter[ed] into a transaction" with the "purpose of discarding" a hazardous substance because not a single "transaction" has been alleged. Instead of pointing to any transaction, Dixon's primary argument is that the Tenth Circuit has recognized a novel category of arranger liability whereby "those same facts" that support owner and operator liability "also support a claim for 'arranger liability'" without any involvement of a third party. (Dkt. No. 111 at 7.) According to Dixon, "for the first time, a federal circuit court of appeal[s]

6

recognized that a party like ALC who excavated mine tailings containing hazardous substances . . . could also be liable as an arranger because, upon excavation of the mine tailings, the hazardous substances became the property of the mining company." (*Id.* at 5.)

But like *Burlington Northern*, *Chevron Mining*'s holding reflects a narrow scope of arranger liability: the Tenth Circuit held that the United States was liable as an "owner" but not an "arranger" regarding property that it leased to a mining company because the United States did not own or possess the hazardous substances disposed of. *Chevron Mining*, 863 F.3d at 1261. The Tenth Circuit addressed the "by any other party" language in the statute by making clear that the phrase modifies "arranged for disposal" rather than "hazardous substances owned or possessed." *Id.* at 1281–82. In other words, arranger liability attaches where a party arranged for disposal of hazardous substances—that it owns or possesses—by any other party. Indeed, two such transactions with third parties were present in *Chevron Mining*: the United States' sale of land and its approval of pipeline permits with the intent of disposal. *Id.* Thus, *Chevron Mining* did not recognize a new kind of arranger liability absent a transaction with a third party.[1]

During oral argument, Dixon relied on *United States v. Monsanto Co.* to argue that the Fourth Circuit does not require "by any other party" as an essential element of arranger liability. 858 F.2d 160 (4th Cir. 1988). But *Monsanto* also focused on whether the defendant "owned or possessed" the hazardous substances at issue; the "by another party" element was simply not at issue in the case. *Id.* at 170 (reasoning that CERCLA does not require "proof of ownership" that rises to the level of "'fingerprint[ing] wastes"). No other case Dixon cites supports its argument that ALC can "arrange for" the disposal of mine tailings without transacting with any other party. *See, e.g.*, *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1341 (4th Cir.

---

[1] Nor does the case help Dixon's argument. Although Dixon devoted much of its briefing to arguing that ALC "owned or possessed" the mine tailings, ALC does not contest its ownership or possession for purposes of the motion to dismiss. (Def.'s Reply 3, Dkt. No. 117.)

1992) (rejecting arranger liability claim because plaintiff failed to "allege[] that [defendant] arranged for the contaminated soil to be disposed of 'by any other party or entity' under 9607(a)(3)"); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1511 (11th Cir. 1996) ( rejecting arranger liability claim because failure to remove tar seeps from the ground was "inaction [that] does not amount to an 'arrangement' for disposal within the meaning of CERCLA"). Thus, the court refuses to ignore the plain language, "by any other party," under 42 U.S.C. § 9607(a)(3). *See Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 122 (D.D.C. 2014) ("Arranger liability generally prevents owners of hazardous waste from avoiding liability under CERCLA by transferring ownership of the waste to another party for the purposes of disposal.")

Alternatively, Dixon argues that it has satisfied the "by any other party" requirement. First, Dixon directs the court to ALC's preliminary engineering review agreement and to ALC's DMME permit amendment. (Am. Compl. Ex. E, F, Dkt. Nos. 85-5, 85-6.) But nothing in either document refers to contractors or transactions with third parties. Second, Dixon asks the court to infer that ALC's mine tailing extractions involved third party contractors. In the absence of allegations regarding contractors in the amended complaint, the court declines to make that inference. *See Cozart*, 680 F.3d at 365 (The court need not "accept legal conclusions couched as facts or unwarranted inferences.") Thus, the court will grant ALC's motion to dismiss the arranger liability claim in count one of Dixon's amended complaint. (Dkt. No. 85.)

**B. Dixon's Motion to Strike ALC's Affirmative Defenses**

Dixon moves to strike all of ALC's affirmative defenses as either not permitted under CERCLA or as conclusory. ALC argues that the three exclusive defenses permitted under 42 U.S.C. § 9607(b) are not exclusive defenses in contribution claims brought under 42 U.S.C. §

9613 and that its defenses are contextually comprehensible. The court concludes that ALC's affirmative defenses are validly pleaded.

1. **Standard of review**

Under Federal Rule of Civil Procedure Rule 8(b), "in responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it," Fed. R. Civ. P. 8(b)(1)(A), and "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense," Fed. R. Civ. P. 8(c)(1). The primary purpose of Rule 8 is to ensure that the plaintiff has adequate notice that a defense will be raised at trial or in a subsequent dispositive motion, *Hewitt v. Mobile Research Tech., Inc.*, 285 F. App'x. 694, 696 (11th Cir.2008), and not to "show" the court or the plaintiff that the defendant is entitled to the defense, *Odyssey Imaging, LLC v. Cardiology Assoc. of Johnston, LLC*, 752 F. Supp. 2d 721, 726 (W.D. Va. 2010). "Dismissal under Rule 12(f) is appropriate where the defendant has not articulated its defenses so that they are contextually comprehensible." *Odyssey*, 752 F. Supp. 2d at 726 (citing *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)). In other words, affirmative defenses may not be pled "so cryptically that their possible application will remain a mystery until unearthed in discovery." *Id.*

2. **ALC's affirmative defenses are validly pleaded in this action.**

ALC's affirmative defenses are as follows: (1) failure to state a claim;[2] (3) act of God; (4) act or omissions of a third party; (5) failure to mitigate; (6) contributory negligence; (7) damages were costs Dixon was contractually obligated to pay; and (8) quantum meruit.

   a. *Affirmative defenses (1), (5), (6), (7), (8)*

CERCLA only allows for three exclusive, enumerated defenses under 42 U.S.C. 9607(b): act of God, act of war, and act or omission of a third party. Nevertheless, a plaintiff asserting a

---

[2] During oral argument, ALC withdrew its second affirmative defense concerning the statute of limitations.

9

CERCLA claim must still plead a claim upon which relief may be granted. *See Berger v. City of N. Miami*, 820 F. Supp. 989 (E.D. Va. 1993) (granting 12(b)(6) motion to dismiss CERCLA claims). Thus, ALC's first affirmative defense of failure to state a claim is valid.

With respect to ALC's last four defenses, Dixon leans most heavily on *Stringfellow*, a Central District of California case, for the proposition that the three CERCLA defenses (act of God, act of war, act or omission of an unrelated third party), 42 U.S.C. § 9607(b), are the only available defenses, even in contribution actions brought under § 9613. *See United States v. Stringfellow*, 661 F. Supp. 1053 (C.D. Cal. 1987). But *Stringfellow* does not support this proposition. The *Stringfellow* court considered only liability under CERCLA section 107(a), 42 U.S.C. § 9607(a), not contribution under CERCLA section 113, 42 U.S.C. § 9613. 661 F. Supp. at 1061 ("[T]he Court will consider contribution of damages at a subsequent proceeding since it does not affect defendants' initial liability."). The court explicitly asserted that it "has discretion to use equitable factors in apportioning damages," although "the Court's discretion in apportioning damages among the defendants during the contribution phase does not effect [sic] the defendants' liability." *Id.* at 1060. Ultimately, the court concluded that "the only affirmative defenses that can be asserted *to liability under section 107(a)* are those listed in section 107(b)." *Id.* (emphasis added). Thus, *Stringfellow* supports Dixon's correct assertion that CERCLA only allows for three defenses to § 9607(a) liability, but it does not support the argument that CERCLA only allows for three defenses to contribution actions brought under § 9613.

The court may properly consider ALC's affirmative defenses (5)–(8) to Dixon's contribution claim after liability has been established, a conclusion that is bolstered by the cases on which Dixon relies. First, in *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 89 (3d Cir. 1988), the Third Circuit explicitly noted that "[t]he defenses enumerated in

10

section 9607(b) are not exclusive in suits for contribution," and "the defenses in section 9607(b) coexist with equitable considerations that may mitigate damages." Second, while *United States v. Shell Oil Co.*, No. 91-cv-589, 1992 WL 144296, at *9 (C.D. Cal. Jan. 16, 1992), did not involve a contribution claim brought under § 9613, the district court did not strike the defendants' affirmative defenses to the § 9607(a) action: "While the issues of setoffs and recoupment are perhaps inappropriate as affirmative defenses, the Court will not dismiss these defenses as the issues will be addressed after liability has been established." Third, the district court in *Richmond, Fredericksburg & Potomac Railroad Co. v. Clarke*, No. 90-336, 1991 WL 321033, at *5 (E.D. Va. Jan. 22, 1991), reasoned that the defendant's common law defenses to claims brought under § 9613 as well as § 9607(a) were allowed as "factors," though not technically as "defenses," for the court to consider in determining damages. Therefore, the court concludes that it may consider defenses (5)–(8) after liability has been established.

    *b. Affirmative defenses (3) and (4)*

  Although these are two of the expressly enumerated defenses under 42 U.S.C. § 9607(b), Dixon argues that they are "conclusory and too loosely pled." This court has explained that the standard for pleading defenses differs from that for pleading a claim in that, rather than "show" the pleader is entitled to relief, "defenses must be contextually comprehensible in order to give the plaintiff adequate notice of the nature of the defense." *Cheney v. Vitro Am., Inc.*, No. 7:10-cv-00246, 2010 WL 5125281, at *1 (W.D. Va. Dec. 9, 2010). The requirement of "contextual comprehensibility" bars defenses that are pled "so cryptically that their possible application will remain a mystery until unearthed in discovery." *Odyssey*, 752 F. Supp. 2d at 726.

  ALC's third affirmative defense is: "The 2013 releases and threatened releases of hazardous substances at the Site were caused solely by an act of God." (Dkt. No. 106.) Its

11

fourth affirmative defense is: "The 2013 releases and threatened releases of hazardous substances at the Site were caused solely by the acts or omissions of a third party, other than an agent or employee of Austinville or one whose act or omission occurred in connection with a contractual relationship with Austinville." (*Id.*) These affirmative defenses are specific to 2013, and in light of the heavy rainfall and discharge of pollutants in June 2013 that led both parties to enter into a letter of agreement with DMME, they are far from "cryptic" or "unintelligible." *Odyssey*, 752 F. Supp. 2d at 726. The court concludes that ALC's third and fourth affirmative defenses are validly pleaded defenses that provide adequate notice to Dixon.

### III. CONCLUSION

For the foregoing reasons, the court will grant ALC's motion to dismiss Dixon's arranger liability claim and deny Dixon's motion to strike ALC's affirmative defenses.

An appropriate order will follow.

Entered: October 31, 2017.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge