IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DIXON LUMBER COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:16-cv-00130 |
| ) | |
| AUSTINVILLE LIMESTONE COMPANY, ) | By: Elizabeth K. Dillon |
| INC., ) | United States District Judge |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Pending before the court is a motion by defendant Austinville Limestone Company, Inc. (ALC) to preclude plaintiff Dixon Lumber Company, Inc. (Dixon) from introducing at trial any evidence relating to drainage from ALC's property onto Dixon's adjacent Austin Meadows property. (Dkt. No. 120.) The motion has been fully briefed and argued at the pretrial conference held on November 13, 2017. For the reasons discussed below, the court will DENY ALC's motion, without prejudice to ALC's ability to object at trial.

**I. BACKGROUND**

Dixon and ALC own adjacent plots of land in Wythe County, Virginia. Both companies bought their property from Gulf & Western Industries (G&W), which operated a zinc and lead mine on ALC's site through a division called New Jersey Zinc Company (NJZ). Years before ALC and Dixon purchased their properties, NJZ dumped limestone tailings, a byproduct of its mining operations, on the land now owned by Dixon. Dixon seeks to hold ALC responsible for environmental liabilities arising from those limestone tailings under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 1906–9675.

Dixon's original complaint alleged that ALC was liable for response costs as an "owner" under 42 U.S.C. § 9607(a)(1) and as an "operator" under 42 U.S.C. § 9607(a)(2), as well as for contribution under 42 U.S.C. § 9613.  By order dated June 9, 2017, the court held that ALC was not a corporate successor to G&W for purposes of CERCLA liability under § 9607(a)(1).  (Dkt. No. 70.)  Thereafter, Dixon filed a first amended complaint adding the claim that ALC is liable as an "arranger" pursuant to 42 U.S.C. § 9607(a)(3).  By order dated October 31, 2017, the court dismissed without prejudice Dixon's arranger liability claim.  Dixon's original and its amended complaint both center on allegations that ALC failed to timely remove tailings as required by the parties' agreements and failed to remove tailings in compliance with the standards of Virginia's Department of Environmental Quality (DEQ) and Department of Mining, Minerals, and Energy (DMME).

After Dixon filed its amended complaint, ALC served its third interrogatories pursuant to the court's order permitting written discovery requests limited to the theory of arranger liability. (Dkt. No. 84.)  In response to ALC's first question in its third interrogatories, which asked Dixon to "[i]dentify the persons or entities with whom ALC 'by contract, agreement, or otherwise, arranged for disposal or treatment of hazardous substances' as alleged in paragraph 32 of the First Amended Complaint," Dixon stated: "Disposals of hazardous mine tailings from ALC's adjacent property which drained onto Dixon's property as well as disposed from ALC's operation on Dixon's property caused releases and threats of releases of hazardous substances to the environment which caused Dixon to incur past, present and future response costs."  (Ex. A, Dkt. No. 121-1.)

## II. DISCUSSION

ALC moves to preclude Dixon from introducing evidence regarding drainage from ALC's property onto Dixon's adjacent Austin Meadows property, because neither Dixon's original nor its amended complaint include allegations regarding drainage. In response, Dixon argues that the July 2016 expert disclosure of Ben Faulkner, an environmental consultant, notified ALC that Dixon would rely upon drainage from ALC's property onto Austin Meadows. The parties agree that the pending motion is moot with respect to arranger liability, in light of the court's dismissal of that claim. Dixon asserts that it intends to use the drainage evidence not for purposes of liability, but rather for background and to address the equitable factors to be considered as to its claim for contribution under 42 U.S.C. § 9613. The court will allow evidence regarding drainage for these purposes.[1]

In resolving a contribution claim, the court allocates response costs among the liable parties using such equitable factors as it deems appropriate. 42 U.S.C. § 9613(f). Courts often consider the Gore factors, six equitable factors derived from the legislative history of CERCLA, in making this determination. *See Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, 791 F. Supp. 2d 431, 490 (D.S.C. 2011). The first Gore factor is "the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished." *Id.* In many cases, this is "the dominant factor in determining each party's equitable share of liability" because it sheds light on "the extent to which the response costs are attributable to waste for which that party is directly responsible." *Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 132 (D.D.C. 2014) (internal citation omitted). Although at times there are sufficient facts for a court to find that a particular facility, party, or disposal action was responsible for a specific proportion of contamination at a site, *see, e.g., AlliedSignal,*

---

[1] Ultimately, though, the court may decide not to consider the evidence.

*Inc. v. Amcast Int'l Corp.*, 177 F. Supp. 2d 713, 724 (S.D. Ohio 2001), in cases where such a finding is not possible, the court must "determin[e] the probable sources of . . . contamination at the [s]ites." *Ashley II*, 35 F. Supp. 3d at 124.

Here, Dixon alleges that drainage from ALC's property was responsible for contamination at Austin Meadows. Evidence regarding such drainage may be relevant to the first Gore factor. *See id.*; *see also Lockheed Martin*, 35 F. Supp. 32 at 124. Or such evidence may ultimately be irrelevant. The court simply cannot tell, based on the current record, whether Ben Faulkner even claims that the drainage occurred from ALC's property, rather than from other locations.[2] Nevertheless, because Dixon may well present factual bases sufficient for the court to rely upon, the court cannot deem evidence regarding drainage irrelevant at this stage in the litigation. *See* Fed. R. Evid. 402.

Furthermore, Dixon was not required to plead specific equitable contribution factors under 42 U.S.C. § 9613. Indeed, ALC cites to no cases requiring the factors to be pled, and the prima facie case requirements do not include pleading the contribution factors.[3] In *Minyard Enter., Inc. v. Se. Chem. & Solvent Co.*, 184 F.3d 373, 386 (4th Cir. 1999), the defendant argued that the district court erred in holding liable for contribution for response costs pursuant to § 9613, because, while the plaintiffs expressly alleged a cause of action under § 9607(a), they did not expressly seek contribution among potentially responsible parties under § 113(f) in their

---

[2] Faulkner asserts that at Austin Meadows, "the primary cause of episodic release of tailings and related contaminants was from storm water or episodic collapse of tailings when a section of RCP [reinforced concrete pipe] would fail. This may have been related to on-going mine tailings removal activity on the site and stock-piling of the removed tailings on site rather than hauling them off-site for sale or disposal." (Dkt. No. 125-1 ¶ 4). Faulkner goes on to explain that "much of the contamination load in the stream that entered the New River downstream of the railroad . . . crossing this day was due to this previously undocumented source. The source is very likely the upwelling of drainage from the New Jersey Zinc underground mine works that cross under the metal flume." (*Id.* ¶ 6). ALC argues that Faulkner's identifying these possible contaminants is not relevant because the source is unmapped mine works located downstream from ALC's property and north of Route 69, whereas ALC's property and Austin Meadows are located south of Route 69.

[3] Nor does ALC point to interrogatories or deposition questions in which it sought information regarding the equitable factors upon which Dixon relies or facts in support of each factor.

4

complaint. The Fourth Circuit held that even though the plaintiffs did not expressly plead contribution, they were entitled to contribution of response costs under § 9613 because they pleaded and proved allegations supporting that they, as well as the defendant, were responsible parties under § 107(a). 184 F.3d at 386. In this case, Dixon has expressly sought contribution, and the court will not prematurely hinder Dixon's opportunity to prove allegations relevant to the court's analysis under § 9613.

### III. CONCLUSION

For the foregoing reasons, ALC's motion will be DENIED without prejudice.

Entered: November 22, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge